UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RITA F. STEVENS                                                                               PLAINTIFF

v.                                        CIVIL ACTION NO. 3:09CV-593-S

DR. EDWARD C. ADLER                                          DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on motion of the defendant, Dr. Edward C. Adler, for summary judgment (DN 15).

On January 20, 2010, the defendant, Dr. Adler, filed a motion for summary judgment in this action alleging violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*("ADA"), and its state law analog in Dr. Adler's treatment of a patient, Rita F. Stevens, during an office visit on July 23, 3008. Stevens did not file a timely response to the motion. On April 19, 2010, the United States Magistrate Judge held a telephonic conference concerning the an upcoming settlement conference which had previously been scheduled in the case. After discussion of the status of the matter, including the pending motion for summary judgment to which no response had been filed and the lack of discovery responses by the plaintiff, the magistrate judge remanded the settlement conference from the docket. The plaintiff was afforded until Friday, April 23, 2010 to file a motion for extension of time to respond to the motion for summary judgment. Stevens did not comply with the court's order. Rather she filed a response brief without leave of court on April 23, 2010. In his reply to Stevens' response, Dr. Adler objects to the filing of the response on the grounds that it is untimely and in contravention of the court's order. He urges the court to strike the response. Dr. Adler also contends that the response is insufficient as a matter of law to overcome summary judgment.

First we note that the response is, indeed, in contravention of the court's order. As Stevens has failed to seek leave of court to file the response over three months late, the pleading is not properly before the court. In any event, the response fails to identify any genuine issues of material fact or to controvert the contention that Dr. Adler is entitled to judgment as a matter of law.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

In order to establish a *prima facie* case of discrimination and/or retaliation under Title III of the ADA, Stevens must show that she has a disability, that Dr. Adler's office is a place of public accommodation, and that she was denied full and equal medical treatment because of her disability. She must additionally show that she was denied treatment under circumstances which give rise to the inference that such denial was based solely on her handicap. *Mayberry v. VonValtier*, 843 F.Supp. 1160 (E.D.Mich. 1994).

It is undisputed that Stevens suffers from adult onset hearing loss and that she is completely deaf. It is also undisputed that Dr. Adler's office where he practices gastroenterology and internal medicine is a place of public accommodation under the ADA. The following facts are undisputed concerning the July 23, 2008 office visit which forms the basis for this lawsuit.

Stevens had an extensive prior professional history with Dr. Adler prior to her appointment on July 23, 2008. She was first seen by him in 2004 and continued to treat with him for various gastroenterologic problems until the incident in question. Upon her referral to Dr. Adler by her primary care physician, Stevens underwent various diagnostic tests. After evaluation, Stevens was placed on a number of medications to treat her complaints. She continued to be followed by Dr. Adler. She was seen by him on eight occasions between 2004 and 2008. In May of 2008, Stevens was again evaluated for increased abdominal pain. Various tests were again performed and Stevens was prescribed different medications. In June, 2008 Dr. Adler referred her to a surgeon for possible removal of her gallbladder after an HIDA scan yielded an abnormal result. On June 27, 2008, Dr. Janet Chipman removed Stevens' gallbladder. Stevens returned to Dr. Adler on July 23, 2008. She reported that some of her earlier symptoms were improved, but related a number of abdominal complaints. Adler increased her medication dosage and referred her for a test at Norton Hospital.[1] She was advised to see her OB/GYN for an (overdue) PAP test and pelvic exam to rule out any gynecological issue related to her abdominal complaints, and was told to follow up with her primary care physician. The test was scheduled but Stevens later canceled the procedure, requested her

---

[1] The complaint alleges at ¶ 9 that Dr. Adler did not prescribe any medication nor order any tests. The medical records submitted in support of the motion for summary judgment directly controvert this allegation. Stevens unsworn, unsigned affidavit submitted as an exhibit to her response does not address the medical evaluation and treatment by Dr. Adler at this office visit. Rather it relates only the Dr. Adler's statements with which she takes issue in this case. She states that "I apologized for being such a problem for him and that I just wanted to know what to do for my stomach, I didn't want to cause any problems for him. He finally said for me to go to my family Doctor in the future, that he felt it was not necessary for me to return to his office..." Therefore, the course of medical care, including the increase in dosage of her medication, the scheduling of a test at Norton Hospital, and his advice to contact both her OB/GYN and her primary care physician, afforded to Stevens on July 23, 2008 stands unrefuted in the record.

medical records, and left Dr. Adler's practice. There has been no showing that Stevens was denied full and fair medical treatment by Dr. Adler.

We now get to the crux of the complaint in this case. Dr. Adler acknowledges the fact that in meeting the anti-discrimination mandate of the ADA, he is required to accommodate Stevens' disability in such a way as to permit effective doctor-patient communication in providing her medical care. Dr. Adler chose to hire a sign interpreter on more that one occasion at his own expense, including on July 23, 2008, in order to meet this objective. 28 C.F.R. Part 36, Appendix B states that

> The auxiliary aid requirement is a flexible one. A public accommodation can choose among various alternatives as long as the result is effective communication. For example, a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu. Similarly, a clothing boutique would not be required to have Brailled price tags if sales personnel provide price information orally upon request; and a bookstore would not be required to make available a sign language interpreter, because effective communication can be conducted by note pad.

The complaint alleges the following:

> 4. Anticipating [Stevens'] visit, Defendant requested a sign interpreter to be present for Plaintiff's examination.
>
> 5. On the morning of her appointment, the sign interpreter met the Plaintiff at the Defendant's offices and both were brought back to the exam room for the appointment.
>
> 6. The Defendant entered the examination room and proceeded to verbally assault Plaintiff and the interpreter because he was upset for having to provide the ADA required interpreting service.
>
> 7. During the diatribe, the interpreter continued to sign the Defendant's words to the Plaintiff; his language was directed at both women.
>
> 8. Defendant continued to complain about the costs related to the ADA requirement and continually referred to the Plaintiff as a "charity case," making it clear to her that her presence there was not welcome due to its accompanying cost to his business.

The evidence of record, however, tells a different story. Dr. Adler states in his affidavit that

> 6...On that particular visit, I was concerned that the interpreter who had been assigned to assist Ms. Stevens had lingered in the office for an inordinate amount of

- 4 -

time, and was going to bill my practice for the excess time. I expressed my concern and displeasure regarding the interpreter to the interpreter, in Ms. Stevens' presence. My comments were directed solely at the interpreter, involved inter-office matters, did not involve patient care, and was in no way intended to make Ms. Stevens uncomfortable.

...

11. When I learned that [Ms.Stevens] was upset by my comments to the interpreter, I personally wrote to Ms. Stevens clarifying that my comments were not directed at her, that I was sorry for upsetting her, and that I hoped she would return to see me if she needed anything. A true and accurate copy of the note I wrote to Ms. Stevens is attached hereto.

The handwritten note to Stevens is consistent with the statements in the Adler Affidavit. Of greater import, however, is the fact that the unsigned, unsworn affidavit of Stevens and as well as the two letters from Kelly Peace, the Interpreter Coordinator, also support Dr. Adler's statements about what occurred.

In her letter to Stevens, Peace states that she is sorry that Stevens had such a "bad experience" with Dr. Adler, that his behavior was "unprofessional and inappropriate," and that he "should never discuss financial issues *in front of the patient*." 7/24/08 Letter to Stevens (emphasis added). In her letter to Dr. Adler, Peace states that the "experience was less than pleasant," [Dr.Adler's] *questioning of the interpreter about her hourly rate in front of the patient was rude, inappropriate and unprofessional."* She stated that "I find this very unsettling that you would *discuss these things with another professional in front of a patient."* 7/24/08 Letter to Adler (emphasis added). In her affidavit, Stevens states

> Here was *my Doctor and the Sign Interpreter discussing the problems* of him having to provide me with Sign Interpretation to my physical problems...*He was discussing his problem of having to provide Interpreter under the law and him having to pay for that.* He said he did enough "Charity Work" and he felt this was wrong for him to have to provide the interpreter...*He ranted on for several minutes with Ms. Edlin!*

Stevens Statement, ¶ 3.[2]

---

[2]Peace's Letter to Adler recounts that Dr. Adler commented several times that he (Adler) was not a "charity case," that he

(continued...)

In her statement, Stevens says that Dr. Adler "confronted me and Ms. Edlin about the cost and the law..." However, the remainder of her statement and all of the other evidence indicates that rather than a "verbal assault" upon her, this was an annoyed and hostile exchange between Dr. Adler and the sign interpreter in her presence. This is more than a distinction without a difference. This distinction is, in fact, the point. Stevens states as much in her brief when she contends, without citation of authority, that "the ADA anticipates that "full medical treatment" includes the right of the disabled to be treated with dignity." Response, p. 6. This statement is morally sound but legally flawed.

Dr. Adler's annoyance with the cost factor in providing an interpreter is not actionable. *See, Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)(Title VII and the Rehabilitation Act do not "set forth 'a general civility code for the American workplace,' " and they do not insulate employees from "personality conflicts at work that generate antipathy" or "snubbing by supervisors and coworkers."(citation and internal quotations omitted)); *Franklin v. Potter*, 600 F.Supp.2d 38, 78 (D.D.C. 2009)(Plaintiff may have been "injured and inconvenienced," and even "treated somewhat unkindly. But there is a significant gap between such conduct, which was fundamentally personal, and discrimination." *Hancock*, 531 F.3d at 480). The alleged action must cross the line from bad manners to acts which threaten, intimidate, or interfere with an individual with a disability who is seeking to obtain or use goods, services, facilities, privileges, advantages, or accommodations of a public accommodation (28 C.F.R. § 36.206). There has been no evidence offered to establish any more than the spouting of ill-tempered,

---

²(...continued)
went to college, paid taxes, and did not feel that the government had the right to force this (hiring a sign interpreter at his expense) upon his practice. Stevens also recounts that he stated that his medical group was losing money and that this cost was unfair. It is unclear whether Dr. Adler stated that he "did enough charity work," or that he was not a charity case, but what *is* clear from the context of both statements is that he was *not* "continually refer[ing] to Plaintiff as a 'charity case,'" in a "verbal assault" upon Stevens, as alleged in the complaint. At the summary judgment stage, the plaintiff may not rely upon the bare allegations of the complaint. Upon a well-supported motion for summary judgment, the plaintiff must come forward with evidence to establish a genuine issue of material fact in order to avoid summary disposition.

thoughtless comments in the presence of a patient. As with claims under Title VII, despite the plaintiff's subjective belief, there is an objective threshold of substantiality which must be met for a claim to be cognizable. *See, Gupta v. Florida Board of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). That threshold has not been met in this case, as the comments were in the context of cost in a dialogue with the sign interpreter, she was provided full and complete medical care thereafter, and further tests were ordered by this doctor in addition to his instruction that she follow up with her OB/GYN and her primary care physician. He had provided interpreter services for his patients in the past, and provided the service on this occasion, despite his annoyance at the cost to him to do so. We conclude that Dr. Adler is entitled to summary judgment on the claim against him for violation of the ADA.

Stevens alleges that Dr. Adler's conduct violated the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344. The language of the KCRA mirrors that of the ADA. Consequently, claims brought under the KCRA are interpreted consistently with the standards developed under the ADA. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 190-91, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (stating that the KCRA "is construed consistently with the ADA" ); *Brohm v. JH Props., Inc.*, 149 F.3d 517, 520 (6th Cir.1998) (same). Thus we conclude that Dr. Adler is entitled to summary judgment on the claim alleging violation of the KCRA on the same basis as our dismissal of the claim for violation of the ADA.

Additionally, the court concludes that the claim for intentional infliction of emotional distress must be dismissed on the ground that the courts of Kentucky have found this "gap-filler" cause of action is not available for "'petty insults, unkind words or minor indignities.' Nor is it to compensate for behavior that is 'cold, callous and lacking in sensitivity.' Rather, it is intended to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees." *Goebel v. Arnett*, 259 S.W.3d 489, 493 (Ky.App. 2007). *Compare, Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 2 (Ky. 1990)(nurses' comments that patient should "shut up" after delivering

stillborn baby and that the baby would be "dispose[d] of right here in the hospital" held not to constitute outrageous conduct).  As Stevens has shown no more than that Dr. Adler was rude and insensitive in discussing in her presence his displeasure over the cost of interpreter services, Dr. Adler is entitled to summary judgment on the claim for intentional infliction of emotional distress.

      For the reasons set forth herein summary judgment will be entered in favor of Dr.Adler by separate order.

**IT IS SO ORDERED.**